### A09A0279. SIMMONS v. THE STATE.
(681 SE2d 712)

PHIPPS, Judge.

Events following a search of a vehicle in which Joseph Henry Simmons, Jr., was a passenger led to his conviction of trafficking in cocaine. On appeal, Simmons challenges the sufficiency of the evidence and the admissibility of certain evidence on various grounds, including an argument under the Fourth Amendment. In addition, he asserts that his trial should have been severed from that of a co-defendant. Regarding Simmons's claims other than under the Fourth Amendment, we find that he has shown no reversible error. Because his Fourth Amendment claim concerns the legality of the search of the vehicle, however, we vacate the judgment and the order denying Simmons's motion to suppress the drug evidence and remand this case for further consideration in light of the United States Supreme Court's recent decision in *Arizona v. Gant*.[1]

1. When an appellant challenges the sufficiency of the evidence to support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2] The appellant no longer enjoys a presumption of innocence, and an appellate court determines only the legal sufficiency of the evidence and does not weigh the evidence or assess the credibility of the witnesses.[3]

The evidence showed that on September 29, 2005, Simmons was the back seat passenger of a Buick that pulled off a public roadway and parked in the parking lot of a fast food restaurant. A law enforcement officer recognized the car from the previous day, when he discovered that it was neither covered by insurance nor registered. As the driver was walking toward the restaurant, the officer arrested him. The officer then asked Simmons and the front seat passenger to step out of the Buick so that it could be searched. They complied, and a quantity of 9.27 grams of marijuana was discovered stashed in a potato chip bag found in the armrest area between the two front seats.

---

[1] __ U. S. __ (129 SC 1710, 173 LE2d 485) (2009).

[2] *Selfe v. State*, 290 Ga. App. 857, 858 (1) (660 SE2d 727) (2008) (punctuation and emphasis omitted), quoting *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[3] *Segel v. State*, 293 Ga. App. 506 (1) (a) (667 SE2d 670) (2008).

All three men who had been in the car were searched. Simmons and the other passenger were handcuffed and also taken into custody. Simmons, who was handcuffed behind his back, was then transported to jail alone in the back of a patrol car. After escorting Simmons into the jailhouse building, the transporting officer searched and found wedged in the back seat of the patrol car a brown paper bag containing what appeared to be cocaine. A chemist working for the Georgia Bureau of Investigation, Division of Forensic Sciences (Crime Lab), analyzed what was found and determined it was 79.67 grams of a substance containing 72.4 percent cocaine.

Simmons and the two men who had been arrested with him were tried together. The jury found Simmons guilty under OCGA § 16-13-31 (a) (1), which provides that a person commits trafficking in cocaine when he "is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine."

(a) Simmons argues that the state's circumstantial evidence failed to show that he was knowingly in possession of the cocaine. Relying on the rule that mere presence at the scene of a crime is insufficient to convict,[4] he asserts that the evidence showed merely that he had been sitting near a location where cocaine was subsequently found. Moreover, he cites evidence that the patrol car was used by other police officers; that he was searched and handcuffed before he was placed in the patrol car; that the ride to the jail was approximately two minutes; that during the ride, the transporting officer admittedly did not see him put the brown bag in the back seat, did not hear the noise of a paper bag being wedged, and did not otherwise notice him doing anything suspicious.

Simmons disregards other circumstantial evidence that showed that he had been knowingly in possession of the cocaine. The officer who transported Simmons to jail testified that, at the beginning of his shift that day, he checked the back seat area to make sure that there were no drugs or contraband. Regarding the back seat itself, the officer described, "[I] pulled it out and then slapped the back seat on both sides to make sure if anyone had been transported earlier that they didn't stick anything back up to that area." The officer recounted that after his inspection of the back seat area, Simmons had been the first person to ride there. When they reached the jailhouse parking lot, the officer assisted Simmons out of the patrol car and escorted him into the building, where the officer remained for less than five minutes before returning to the patrol car. The officer testified that he had become suspicious that Simmons had

---

[4] See *Williams v. State*, 256 Ga. 460, 461 (2) (349 SE2d 695) (1986).

stuffed something underneath the back seat because, as he was assisting Simmons out of the patrol car, he noticed debris on the back of Simmons's pants and on the back seat. Thus, the officer searched and found the brown bag containing the contraband. The officer testified that between his initial and subsequent inspections, Simmons had been the only passenger in the patrol car's back seat.

Under OCGA § 24-4-6, upon which the jury was instructed, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

> [Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, although circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed [on appeal] unless the verdict of guilty is insupportable as a matter of law.[5]

The evidence here authorized the jury to find that the brown bag containing the cocaine was not in the back seat area of the patrol car at the time of the officer's initial inspection and that Simmons had been the only passenger there from the time of that inspection until the contraband was found. "The evidence, although circumstantial, was sufficient under the standard of *Jackson v. Virginia* . . . and under OCGA § 24-4-6 to authorize the jury's verdict that [Simmons] [was] guilty, beyond a reasonable doubt, of possessing the cocaine discovered [wedged in] the seat of the police vehicle."[6]

(b) Simmons contends that the state failed to prove that the substance in the brown bag was a "mixture with a purity of 10 percent or more of cocaine."[7] He points out that the substance received by the Crime Lab was in broken pieces and that the chemist did not test each piece within the submitted evidence, but only samples taken therefrom.

The chemist testified that the evidence submitted to the Crime Lab appeared throughout to be of the same color and consistency. She further testified that, following the Crime Lab's policy, she had tested samples that she had amassed by taking from "multiple chunks" that were throughout the suspected contraband. Although

---

[5] *Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998) (citation omitted).

[6] *Ross v. State*, 240 Ga. App. 563, 565 (524 SE2d 255) (1999), citing *Jackson*, supra; *Norman v. State*, 208 Ga. App. 830 (1) (432 SE2d 216) (1993).

[7] OCGA § 16-13-31 (a) (1).

the chemist acknowledged that she had not tested the entirety of the evidence submitted to the Crime Lab, the jury was nevertheless authorized to find that the state had proved the statutory purity.[8]

2. Simmons contends that the trial court erred by admitting evidence of the cocaine because the state failed to prove its chain of custody. To establish the chain of custody of a fungible substance like cocaine, the state must establish the "identity and integrity" of the substance.[9] "Proving the chain of custody for fungible evidence means accounting for the safekeeping and transportation of the evidence from seizure to trial."[10] "Where the State seeks to introduce evidence of a fungible nature, it need only show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution."[11] "The State need not negative every possibility of tampering, and need only establish reasonable assurance of the identity of the evidence. When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight."[12]

The state presented the testimony of the transporting officer who found the substance. The state also called as a witness the officer who had collected the substance and placed it in an evidence bag, which he then sealed, labeled, and transported to the Crime Lab. That officer identified State's Exhibit #1 as that bag, testifying that other than an area that appeared to have been opened then resealed by the Crime Lab, the bag showed no sign of tampering. In addition, the state called as a witness the Crime Lab chemist, who identified State's Exhibit #1 as the bag containing the substance she tested. She described that both ends of the bag were sealed when she received the bag. One seal appeared to have been from the submitting agency; and the other seal was that of the Crime Lab, as another Crime Lab chemist had initially "opened this case." Simmons argues that, because the state did not call that chemist as a witness, the state failed to establish the chain of custody.

"Absent affirmative evidence of tampering, mere speculative doubt as to the handling of evidence while in the possession of the Georgia Crime Lab is a matter for consideration by the jury."[13]

---

[8] See *Means v. State*, 188 Ga. App. 210-211 (2) (372 SE2d 484) (1988).

[9] *Phillips v. Williams*, 276 Ga. 691 (583 SE2d 4) (2003).

[10] Id. at 692 (punctuation and footnote omitted).

[11] *Palmer v. State*, 250 Ga. 219, 222 (3) (297 SE2d 22) (1982) (citation omitted).

[12] *Anderson v. State*, 247 Ga. 397, 399 (2) (276 SE2d 603) (1981) (citations and punctuation omitted).

[13] *Johnson v. State*, 271 Ga. 375, 382 (13) (519 SE2d 221) (1999) (punctuation omitted), citing *Givens v. State*, 214 Ga. App. 774, 775 (2) (449 SE2d 149) (1994), for proposition that the lack of testimony by a Crime Lab employee who originally received evidence does not break the chain of custody.

Where, as here, there is no affirmative evidence of tampering, the Georgia Crime Lab may be treated as "a single 'link' in the chain of custody for admissibility purposes."[14] "The fact that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible."[15] The trial court did not abuse its discretion in finding that a proper chain of custody had been established to admit the evidence.[16]

3. Simmons contends that the trial court should have granted him a separate trial, complaining that the state was permitted to show that the driver of the Buick had given a police statement wherein he confessed that the marijuana was his.[17] Citing *Bruton v. United States*,[18] Simmons asserts that such evidence was admitted in violation of his right to confrontation because the driver did not testify. But as Simmons concedes, he did not seek severance; thus, this issue was not preserved.[19]

4. Simmons contends that evidence associating him with persons involved with drugs should not have been admitted, arguing that it impermissibly injected his character in evidence. Simmons acknowledges, however, that no objection was made in this regard. Thus, any argument that the trial court erroneously admitted evidence that impugned his character was waived.[20]

5. Simmons contends that the trial court erred by denying his motion to suppress the drug evidence, maintaining that the marijuana and cocaine were obtained in violation of the Fourth Amendment.

Simmons argues that the Buick in which he was a passenger was illegally stopped and searched. Evidence adduced at the motion to suppress hearing authorized the trial court's finding that the Buick had not been stopped by any law enforcement officer, but that the driver stopped the vehicle voluntarily in the parking lot of a fast food restaurant.[21]

---

[14] *Givens*, supra.

[15] *Palmer*, supra.

[16] See *Johnson*, supra; *Givens*, supra.

[17] Only the driver faced a charge of marijuana possession. The driver was convicted of that offense, as well as trafficking in cocaine; he appealed from his judgment of conviction. *Swicord v. State*, 293 Ga. App. 545 (667 SE2d 401) (2008) (affirming marijuana possession conviction and reversing cocaine trafficking conviction).

[18] 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968) (admission of the confession of a nontestifying co-defendant inculpating the defendant deprived the defendant of his Sixth Amendment right to confront the witness by means of cross-examination).

[19] See *Smith v. State*, 267 Ga. 372, 373 (2) (477 SE2d 827) (1996).

[20] See *Sampson v. State*, 282 Ga. 82, 83 (2) (646 SE2d 60) (2007).

[21] A single hearing was held on Simmons's, the driver's, and the other passenger's joint motion to suppress.

Although Simmons argues that the search of the Buick was illegal, he has no standing to challenge the search directly because he has asserted no possessory interest in the vehicle or in any items found in it. "A passenger who asserts no possessory interest in the car or the items found within it has no standing to challenge a search of the car directly."[22]

By arguing that he was illegally detained during the search of the Buick, Simmons indirectly challenged that search.[23] The trial court rejected Simmons's challenge based upon the "totality and the exigency of the circumstances."

In *Swicord v. State*,[24] we considered the driver's appeal from the denial of the suppression motion and concluded, "Having properly arrested [the driver], the officer was lawfully authorized to search 'the entire passenger compartment of the automobile and any closed containers therein.' "[25] Our conclusion stemmed from the United States Supreme Court's holding in *New York v. Belton*[26] that "police may search the passenger compartment of a vehicle and any containers therein as a contemporaneous incident of an arrest of the vehicle's recent occupant."[27] The Supreme Court, however, recently limited that holding. In *Arizona v. Gant*,[28] the Court held that police are authorized "to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."[29]

All of the briefs in this case were due before the United States Supreme Court issued its decision in *Arizona v. Gant*, and the search at issue here falls within the scope of that case. Under these circumstances,

> we vacate the trial court's order denying [Simmons's] motion to suppress and remand this case to the trial court to conduct a hearing and consider[, among other things,] the

---

[22] *Tiller v. State*, 261 Ga. App. 363, 365 (582 SE2d 536) (2003) (punctuation and footnote omitted).

[23] See *State v. Menezes*, 286 Ga. App. 280, 282 (1) (648 SE2d 741) (2007) (because a passenger has standing to contest the passenger's own illegal seizure and detention in connection with a traffic stop, and because evidence or contraband discovered in a search of the car during the traffic stop may be considered the fruits of the passenger's illegal detention, the passenger may move to suppress the evidence or contraband and may thus indirectly challenge the search of the car); *Tiller*, supra.

[24] Supra.

[25] Id. at 547 (1) (punctuation omitted), quoting *Tutu v. State*, 252 Ga. App. 12, 14 (1) (555 SE2d 241) (2001), citing *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981).

[26] Supra.

[27] *Arizona v. Gant*, supra, 129 SC at 1717 (I), explaining *Belton*, supra.

[28] Supra.

[29] Id. at 1719 (III) (footnote omitted).

Supreme Court's holding in *Arizona v. Gant*, supra. A party adversely affected by the trial court's ruling may appeal from that ruling within 30 days after its entry.[30]

6. Simmons further requests that his case be remanded so that he can pursue an ineffective assistance of counsel claim. Simmons's trial counsel filed his notice of appeal to this court, and his current appellate counsel had no prior opportunity to raise an ineffective assistance of counsel claim. Simmons has shown that this direct appeal is the first practicable moment he could have raised such an issue. Thus, if appropriate while this case is before the trial court on remand,[31] Simmons may pursue his claim of ineffective assistance of trial counsel.[32]

*Judgment vacated and case remanded with direction. Smith, P. J., and Bernes, J., concur.*

DECIDED JULY 13, 2009.

*John G. Edwards*, for appellant.
*Joseph K. Mulholland, District Attorney, Samuel M. Olmstead, William J. Hunter, Assistant District Attorneys*, for appellee.

---

[30] *Agnew v. State*, 298 Ga. App. 290, 293 (3) (680 SE2d 141) (2009).

[31] See Division 5, supra (concerning remand in connection with Simmons's motion to suppress).

[32] See *Patel v. State*, 278 Ga. 403, 408 (9) (603 SE2d 237) (2004).