## A10A0156. GRIMES v. THE STATE.

(695 SE2d 294)

BERNES, Judge.

After the trial court denied his motion to suppress, a Walker County jury convicted David Grimes of possession of methamphetamine. On appeal from the denial of his motion for new trial, Grimes contends that the trial court erred by denying his motion to suppress and failing to charge the jury on his equal access defense. Because this case involves a search of an automobile following an arrest, we vacate in part the order denying Grimes's motion to suppress and remand the case to the trial court for further consideration in light of the United States Supreme Court's recent decision in *Arizona v. Gant*, ___ U. S. ___ (129 SC 1710, 173 LE2d 485) (2009). We affirm in all other respects.

1. Following the grant or denial of a motion to suppress, we construe the evidence in the light most favorable to uphold the findings and judgment of the trial court. *Postell v. State*, 279 Ga. App. 275, 276 (1) (630 SE2d 867) (2006). The trial court's findings on

disputed facts and credibility issues will not be overturned on appeal if there is any evidence to support them. Id. In conducting our review, we may consider evidence introduced at the hearing on the suppression motion and at trial. Id.

Viewed in this manner, the evidence showed that around midnight on August 29, 2009, an officer with the City of LaFayette Police Department stopped at a local convenience store. While the officer was inside the store, the clerk advised him that a white male, later identified as Grimes, had been "fiddling" with a grey vehicle parked in front of the store for the last two hours. The officer decided to investigate and approached the parked vehicle, which did not have a license tag displayed. When the officer came up to the vehicle, he observed Grimes crouching in the passenger seat next to wires from the car radio that had been unattached from the front console of the dashboard. No one else was in or around the vehicle. The officer asked Grimes for identification and inquired about what he was doing in the parking lot. Grimes showed the officer a copy of a traffic citation bearing his name in lieu of a driver's license and told the officer that he was working on the vehicle's stereo system. The officer radioed the identification information to his dispatcher and learned that Grimes had a suspended driver's license. At that time, a sheriff's deputy who had been at the convenience store earlier that night arrived on the scene and informed the officer that he had observed Grimes drive into the parking lot. The officer then arrested Grimes for driving on a suspended license. According to the officer, his encounter with Grimes up to the point of the arrest lasted approximately five to ten minutes.

After Grimes was arrested and secured in the back seat of the police car, the officer conducted a search of the interior of Grimes's vehicle before it was towed and impounded. While doing so, the officer discovered a fanny pack on the front seat that contained a white substance which tested positive as methamphetamine.[1]

(a) Grimes contends that the drug evidence should have been suppressed because the arresting officer lacked reasonable suspicion to stop and then detain him in the parking lot as required by *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). His contention misses the mark, however, because the officer did not seize Grimes prior to his arrest in a manner that required reasonable suspicion or

---

[1] Although not enumerated as error, we conclude that the testimony of the arresting officer, sheriff's deputy, and forensic chemist who tested the white substance was sufficient to enable a rational jury to find Grimes guilty beyond a reasonable doubt of possession of methamphetamine. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA § 16-13-30 (a). "Questions concerning the weight of the evidence and credibility of the witnesses were for the jury to decide." *Johnson v. State*, 289 Ga. App. 206, 208 (656 SE2d 861) (2008).

that otherwise implicated the Fourth Amendment.

> There are three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief "seizures" that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.

(Citations and punctuation omitted.) *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997). "[A] 'seizure' within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave." (Citation and punctuation omitted.) *Chapman v. State*, 279 Ga. App. 200, 202 (1) (630 SE2d 810) (2006).

The encounter between the officer and Grimes up to the point of his arrest was of the first tier because the officer's words and conduct did not create an impression that Grimes was not free to leave. Having been advised by a concerned store clerk about a suspicious situation, the arresting officer simply approached Grimes's parked vehicle, asked for identification, and inquired into what Grimes was doing in the vehicle. "The actions of an officer approaching a stopped vehicle, requesting to see a driver's license, and inquiring about possible criminal or suspicious activity clearly fall within the realm of the first type of police-citizen encounter and do not amount to a stop." (Citations omitted.) *McClain*, 226 Ga. App. at 716 (1). See also *Chapman*, 279 Ga. App. at 202 (1); *State v. Cates*, 258 Ga. App. 673, 674-675 (574 SE2d 868) (2002) (physical precedent only); *State v. Folk*, 238 Ga. App. 206, 207-208 (521 SE2d 194) (1999). Furthermore, there was no evidence that the arresting officer, or the sheriff's deputy who arrived immediately before Grimes was arrested, physically touched Grimes, displayed a weapon, activated the lights or siren on his respective patrol car, or used language or a tone of voice

reflecting that compliance from Grimes was compelled prior to his arrest. See *State v. Cauley*, 282 Ga. App. 191, 197 (2) (638 SE2d 351) (2006). Rather, the testimony of the arresting officer and sheriff's deputy reflected that until Grimes was arrested, Grimes's movement was not restrained by means of physical force or show of authority, nor was he prevented from driving away from the convenience store.[2]

Because there was testimony indicating that the police encounter with Grimes up to the point of his arrest was consensual and involved no coercion or detention, the trial court was authorized to find that the encounter was of the first tier and, therefore, did not require a showing that the police acted with reasonable suspicion of criminal activity. See *Chapman*, 279 Ga. App. at 202 (1); *Cates*, 258 Ga. App. at 674-675; *Folk*, 238 Ga. App. at 207-208; *McClain*, 226 Ga. App. at 716 (1).[3] And once the officer learned that Grimes had been driving with a suspended license, the officer had probable cause to arrest him, a point not disputed on appeal. See *Johnson v. State*, 297 Ga. App. 254, 255-258 (676 SE2d 884) (2009). The trial court thus correctly denied Grimes's motion to suppress on the asserted ground.

(b) Grimes further contends that even if his initial encounter with the officer and subsequent arrest passed constitutional muster, the drug evidence should have been suppressed because the officer's search of his vehicle was not a proper search incident to arrest under the recent case of *Arizona v. Gant*, 129 SC at 1710.

In *New York v. Belton*, 453 U. S. 454, 460 (II) (101 SC 2860, 69 LE2d 768) (1981), the United States Supreme Court held that

> when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile [and] may also examine the contents of any containers found within the passenger compartment.

(Footnotes omitted.) But in *Gant*, the Supreme Court limited *Belton* and held that the search-incident-to-arrest exception to the Fourth Amendment warrant requirement applies only to situations (1) where "the arrestee is unsecured and within reaching distance of the

---

[2] The presence of more than one law enforcement officer does not transform a consensual interaction into a second-tier encounter, where, as here, the totality of the circumstances support a finding that the interaction was a first-tier encounter. See *Cauley*, 282 Ga. App. at 197-198 (2).

[3] That Grimes testified at trial to a different version of events does not change the result because "the trial court, and not this Court, resolves issues of credibility and conflicting evidence" in denying a motion to suppress. *Davis v. State*, 232 Ga. App. 450 (1) (501 SE2d 241) (1998).

passenger compartment at the time of the search," or (2) where "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." (Citation and punctuation omitted.) *Gant*, 129 SC at 1719 (III).

Nevertheless, even if the requirements imposed by *Gant* for a valid search incident to arrest are not satisfied, a warrantless search of a vehicle still may be valid under another Fourth Amendment exception, such as the exception for inventory searches. See *State v. Heredia*, 252 Ga. App. 89, 91 (3) (555 SE2d 91) (2001) ("Our law regarding searches incident to arrest and inventory searches provides two alternative means for finding that a particular search was reasonable."). "When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents." *South Dakota v. Opperman*, 428 U. S. 364, 369 (2) (96 SC 3092, 49 LE2d 1000) (1976). Evidence discovered during such an inventory search is properly seized without a warrant and is admissible into evidence at a subsequent criminal trial. See *Highland v. State*, 144 Ga. App. 594, 595 (241 SE2d 477) (1978). The police, however, cannot use an inventory search as a pretext for an investigatory search, and so there must have been a valid justification for impounding the vehicle. See *Fortson v. State*, 262 Ga. 3, 4 (1) (412 SE2d 833) (1992); *State v. McCranie*, 137 Ga. App. 369, 370 (223 SE2d 765) (1976). As part of an inventory search, the police "may ordinarily inspect the glove compartment, the trunk, on top of the seats as well as under the front seats, and the floor of the automobile." (Citation and punctuation omitted.) *Arnold v. State*, 155 Ga. App. 581, 582 (1) (271 SE2d 714) (1980). The police also may ordinarily examine the contents of bags and containers found in those locations of the vehicle as part of the inventory search. See *Lopez v. State*, 286 Ga. App. 873, 877 (3) (650 SE2d 430) (2007).

The present case involves a search of an automobile following an arrest, and, therefore, falls within the scope of the Supreme Court's decision in *Gant*, unless the search was a proper inventory search. *Gant*, however, was decided after the trial court conducted an evidentiary hearing and denied Grimes's motion to suppress, after the trial on the merits, and after Grimes filed his notice of appeal. Under these circumstances, we vacate in part the trial court's denial of Grimes's motion to suppress and remand for rehearing by the trial court in light of *Gant*. See *Kollie v. State*, 301 Ga. App. 534, 547 (15) (687 SE2d 869) (2009); *Simmons v. State*, 299 Ga. App. 21, 26-27 (5) (681 SE2d 712) (2009); *Agnew v. State*, 298 Ga. App. 290, 292-293 (3) (680 SE2d 141) (2009).[4] The party adversely affected by the trial

---

[4] Given the state of the law at the time of the original evidentiary hearing, the issue of

court's ruling may appeal from that ruling within 30 days after its entry. See id.

2. Grimes also contends that he is entitled to a new trial because the trial court erred by failing to charge the jury sua sponte on the concept of equal access, which he claims was his sole defense. Although a trial court is required to charge the jury on the defendant's sole defense even in the absence of a written request, see *Prather v. State*, 293 Ga. App. 312, 315 (2) (667 SE2d 113) (2008), a charge on equal access was not warranted in this case.

Under the equal access rule, evidence that someone "other than the owner or driver of the automobile had equal access to contraband found in the automobile may or will, depending upon the strength of the evidence, *overcome the presumption that the contraband was in the exclusive possession of the owner or driver*." (Citation omitted; emphasis in original.) *State v. Johnson*, 280 Ga. 511, 512 (630 SE2d 377) (2006). Hence,

> [e]qual access is merely a defense available to the accused to whom a presumption of possession flows. The trial court did not charge the jury that they could presume that contraband was in the exclusive possession of an automobile's owner or driver. Thus, even if the evidence authorized a presumption charge, none was given. Accordingly, no presumption arose. It follows that an equal access charge was neither required nor appropriate as a charge on [Grimes's] "sole defense," and the trial court did not err in failing to give it.

(Citations and punctuation omitted.) *Prather*, 293 Ga. App. at 315-316 (2).

*Judgment affirmed in part and vacated in part, and case remanded. Barnes, P. J., and Blackburn, J., concur.*

DECIDED APRIL 22, 2010.

*David J. Dunn, Jr., Steven A. Miller*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Bruce E. Roberts, Assistant District Attorney*, for appellee.

---

whether there was a proper inventory search was not fully developed or fleshed out at the hearing. Because the record is incomplete regarding whether there was a proper inventory search in this case, we cannot affirm the trial court's suppression order as right for any reason.