**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 6, 2025**

# In the Court of Appeals of Georgia

A24A1296. MORRIS v. THE STATE.

DOYLE, Presiding Judge.

A jury found Latasha Morris guilty of DUI (less safe),[1] failing to stop at a stop sign,[2] and driving with an open container of alcohol.[3] Following the denial of her motion for new trial, Morris appeals, contending that (1) the trial court erred by denying her motion to suppress evidence of a search of her vehicle conducted incident to her arrest because she was only issued a citation; and (2) the trial court committed plain error by instructing the jury that her refusal to take a blood test could support an inference that the presence of alcohol (though not impairment) would have been

---

[1] OCGA § 40-6-391 (a) (1).

[2] OCGA § 40-6-72 (b).

[3] OCGA § 40-6-253 (b) (1) (B).

detected had she taken the blood test. Because the record shows that Morris was under arrest prior to the search, and because she fails to meet her burden to show plain error with respect to the jury instruction, we affirm.

Construed in favor of the verdict,[4] the evidence shows that an Athens-Clark County police officer was dispatched to respond to a 911 call about "a vehicle that struck a curb" at a stop sign. The officer encountered Morris at the scene, standing outside of the car, which was resting with its tire "up against the curb." Morris explained to the officer that she had been driving home, and the officer smelled alcohol on Morris's breath and noticed that she was swaying and had slurred, rambling speech. The officer twice asked Morris to perform field sobriety tests, and Morris refused each time.

Based on his observations about Morris's breath and demeanor, and the location of the car resting against the curb across from a stop sign, the officer decided to arrest Morris for DUI to the extent that she was less safe to drive. As they stood by his patrol car, the officer told Morris that she was under arrest for DUI but stated that he was not going to handcuff her or take her to jail. The officer later explained at the

---

[4] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

suppression hearing that Morris's arrest took place in the summer of 2020, days after an Atlanta driver had been shot and killed by police during a struggle that occurred during a DUI investigation in a parking lot. Due to the "rocky climate" in the community at the time, the Athens-Clark County police had implemented a "soft approach" to non-violent crimes "in order to maintain peace and an equitable society."

After telling Morris that she was under arrest for DUI, the officer read her the implied consent notice and asked her to take a blood test. Morris declined. Following Morris's arrest, the officer searched her vehicle and found a stainless steel cup containing a mixed drink that smelled of alcohol.[5] Based on these facts, the officer issued a citation to Morris for DUI, and eventually allowed her to be transported home by her husband.

Prior to trial, Morris moved to suppress the evidence discovered during the search of her vehicle. She argued that it was not a search incident to arrest because she

---

[5] See generally OCGA § 17-5-1 (a) (4) ("When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within the person's immediate presence for the purpose of . . . [d]iscovering or seizing any . . . things which . . . may have been used in the commission of the crime for which the person has been arrested.").

was never arrested. The trial court denied the motion, and following a jury trial, Morris was convicted on each count. She unsuccessfully moved for a new trial and now appeals.[6]

1. Morris contends that the trial court erred by denying her motion to suppress because the search of her vehicle was not actually incident to arrest, in light of the fact that she was not handcuffed, taken to jail, or booked on the DUI count. Based on the facts of this case, we disagree.

> On a motion to suppress, the State bears the burden of proving that the search at issue did not violate the Fourth Amendment. To carry its burden in this case, the State was required to show that the warrantless search of [Morris's] car was justified. Police officers may conduct a warrantless search of a vehicle without violating the Fourth Amendment . . . [if] the search is conducted incident to the arrest of the driver and/or the car's occupants. The search-incident-to-arrest exception applies . . . [if] it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.[7]

---

[6] The trial court initially did not sentence Morris on the open container count, so this Court remanded her first appeal for entry of a sentence as to that count. Thereafter, the trial court entered that sentence, and the appeal has now been re-docketed in this Court.

[7] (Citation and punctuation omitted.) *Stroud v. State*, 344 Ga. App. 827, 831-832 (3) (812 SE2d 309) (2018), citing *Grimes v. State*, 303 Ga. App. 808, 812 (1) (b) (695 SE2d 294) (2010). See generally *Brown v. State*, 295 Ga. 695, 697 (2) (763 SE2d 710)

Morris argues that this justification does not apply because she was never actually arrested. As support, she cites *Knowles v. Iowa*,[8] which held that a warrantless vehicle search incident to issuing a speeding ticket violated the Fourth Amendment's protection against unreasonable searches.[9] In that case, the search was predicated on an Iowa statute that, as interpreted by the Iowa Supreme Court, authorized officers to conduct a vehicle search based on a traffic offense even if the driver was not arrested and regardless of the need to seek evidence of the offense.[10] Addressing that scenario, the Supreme Court held that the general "bright-line rule" authorizing searches incident to arrest[11] did not extend to searches authorized by Iowa law based

(2014) ("Upon review [of a motion to suppress], we consider both the transcript of the hearing on Appellant's motions to suppress as well as the trial transcript.") (citation omitted).

[8] 525 U. S. 113 (119 SCt 484, 142 LE2d 492) (1998).

[9] See id. at 118-119.

[10] See id. at 115. Compare *Arizona v. Gant*, 556 U. S. 332, 343 (III) (129 SCt 1710, 173 LE2d 485) (2008) ("[W]hen a recent occupant is arrested for a traffic violation, there [often] will be no reasonable basis to believe the vehicle contains relevant evidence.").

[11] See generally *United States v. Robinson*, 414 U. S. 218, 235 (III) (94 SCt 467, 38 LE2d 427) (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.").

on the issuance of a citation.[12] The Court explained in part that "[o]nce Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car."[13]

*Knowles* is distinguishable for two reasons. First, Morris was cited for DUI, and the officer was looking for evidence of that offense. DUI differs from other traffic offenses, such as speeding, because it can involve driving while drinking from a container present in the car at the time of the offense, as here. Therefore, based on the officer's observations of Morris's condition and the odor on her breath, it was reasonable for the officer to believe that the car contained evidence of her drinking.

Second, despite her argument to the contrary, Morris was under arrest during the search. This Court has explained that in the context of implied consent,

> [a]n arrest is accomplished whenever the liberty of another to come and go as he pleases is restrained, no matter how slight such restraint may be. The defendant may voluntarily submit to being considered under arrest

---

[12] See *Knowles*, 525 U. S. at 118-119.

[13] Id. at 118.

without any actual touching or show of force. Thus, implied consent is triggered at the point that the suspect is not free to leave and a reasonable person in his position would not believe that the detention is temporary, regardless of whether a "formal arrest" has occurred.[14]

Likewise, in the context of *Miranda*[15] warnings, "the test to ascertain whether a detainee is in custody . . . is whether a reasonable person in the detainee's position would have thought the detention would not be temporary."[16]

> [And w]hen making this determination, a court must examine all of the circumstances[.] . . . Whether a suspect is in custody does not depend upon the subjective views harbored by either the interrogating officers or the person being questioned. Instead, the only relevant inquiry is how a reasonable person in the suspect's position would have understood the situation.[17]

---

[14] (Citation and punctuation omitted.) *Quint v. State*, 367 Ga. App. 339, 342 (886 SE2d 1) (2023), quoting *Hough v. State*, 279 Ga. 711, 716 (2) (a) (620 SE2d 380) (2005).

[15] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[16] (Citations and punctuation omitted.) *Baggett v. State*, 367 Ga. App. 851, 859 (1) (c) (888 SE2d 636) (2023).

[17] (Punctuation omitted.) *Wright v. State*, 362 Ga. App. 867, 870 (1) (870 SE2d 484) (2022).

Here, although the officer did not place Morris in handcuffs, he unequivocally told her that he was placing her under arrest for DUI. A reasonable person in Morris's position would believe that she was not free to leave, subject to further direction or confinement by the officer, and being charged with a crime. The officer explained at the hearing that he was implementing a "soft approach" to police tactics, but as noted above, making an arrest does not always require a "hard approach" involving handcuffs and the back of a police car.[18] Under the unique circumstances of this case, we decline to hold that Morris was not under arrest simply because the officer did not engage in more forcible tactics.[19] Because Morris was under arrest and her offense was connected to evidence that could be and was located in her car, *Knowles* does not require reversal.

2. Morris also contends that the trial court erred by instructing the jury as follows:

---

[18] See *Quint*, 367 Ga. App. at 342.

[19] Cf. id. at 343 (holding that the driver was under arrest at a hospital despite not being formally detained because an officer unequivocally told her that she was being arrested for DUI).

A person accused of driving under the influence of alcohol to the extent that she was less safe has the right to refuse to submit to chemical tests of her blood as requested by a law enforcement officer.

Should you find that the Defendant refused to take the requested tests, *you may infer that the test would have shown the presence of alcohol though not that the alcohol impaired her driving.*[20] Whether or not you draw the inference is for you to determine. This inference may be rebutted. This inference alone is not sufficient to convict the Defendant.

Morris concedes that she did not object to this charge after it was given, so our review is confined to identifying plain error.[21]

To show plain error, [Morris] must point to an error that was not affirmatively waived, *the error must have been clear and not open to reasonable dispute*, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.[22]

---

[20] (Emphasis supplied.)

[21] See OCGA § 17-8-58 (b) (noting that this Court reviews for plain error unpreserved objections to a jury charge); *Barron v. State*, 297 Ga. 706, 707-708 (2) (777 SE2d 435) (2015) (reviewing the trial court's failure to give a requested jury charge for plain error because the defendant did not renew his objection after the court charged the jury).

[22] (Punctuation omitted and emphasis supplied.) *State v. Williams*, 308 Ga. 228, 231 (2) (838 SE2d 764) (2020).

As Morris acknowledges, Georgia law regarding the admissibility and inferences associated with a refusal to take a state-administered blood test for alcohol has not developed to the point that it clearly and undisputably prohibits the instruction given in this case.[23] To the contrary, such an instruction is consistent with current law.[24]

---

[23] See generally *Garrison v. State*, 368 Ga. App. 819, 825 (2) (890 SE2d 869) (2023) (noting that "our Supreme Court has yet to decide" the implications of the admissibility of a refusal to take a blood test), vacated on other grounds by *Garrison v. State*, 319 Ga. 711 (905 SE2d 629) (2024).

[24] See *Swanson v. State*, 366 Ga. App. 584, 591 (4) (884 SE2d 1) (2023) ("[I]n contrast to a refusal to take a breath test, admission of a defendant's refusal to consent to blood testing does not implicate the constitutional right against self-incrimination and is admissible."), citing *State v. Johnson*, 354 Ga. App. 447, 456-457 (1) (b) (841 SE2d 91) (2020) (holding that the Georgia constitutional right against self-incrimination did not prohibit admission of evidence of defendant's prior refusal to submit to blood-alcohol test). See also *Dunbar v. State*, 309 Ga. 252, 257 (3) (845 SE2d 607) (2020) ("*Elliott*[ *v. State*, 305 Ga. 179 (824 SE2d 265) (2019),] and [the]underlying decision in *Olevik v. State*, 302 Ga. 228 (806 SE2d 505) (2017), were careful to distinguish that their scope does not extend to all types of searches, but is limited to breath tests."); *Elliott*, 305 Ga. at 224 (Boggs, J., concurring) ("As acknowledged both in the [Supreme] Court's opinion [in *Elliott*] and in *Olevik*, the scope of these decisions is limited to chemical tests of a driver's breath; they do not apply to tests of a driver's blood.").

Therefore, Morris's invitation to depart from that precedent in and of itself demonstrates that she cannot meet her burden to demonstrate plain error.[25]

*Judgment affirmed. Hodges and Watkins, JJ., concur.*

---

[25] Cf. *Williams*, 308 Ga. at 231 (2).